COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-369-CR
 
 
THOMAS 
CONRAD ILLINGWORTH                                           APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 3 OF DENTON COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
        Appellant 
Thomas Conrad Illingworth appeals from the trial court’s judgment finding him 
guilty of unlawfully carrying a weapon.  Following a bench trial, the trial 
court sentenced Illingworth to 300 days in the Denton County jail, but suspended 
the sentence and placed Illingworth on community supervision for a period of 
twenty-four months and imposed a $500 fine.  In a single point, Illingworth 
complains that the trial court erred by rejecting his traveling defense.  
We will affirm.
II. Factual and 
Procedural Background
        Illingworth 
resides in Kaufman County and regularly visits his two children, who live in 
Denton County, on weekends.  While visiting, Illingworth typically stays 
overnight at a hotel or with a friend.
        On 
January 5, 2003 just before 1:00 a.m., Officer Jay Powell of the Lewisville 
Police Department was conducting surveillance at the Days Inn Hotel in Denton 
County.  He saw Illingworth’s truck pull into the Days Inn parking lot 
and park in the fire lane.  Officer Powell observed Illingworth going 
through his belongings in the truck, opening and closing the various doors and 
the tool chest located in the truck’s bed.  Officer Powell recognized 
Illingworth because Illingworth had arrived at the hotel the previous night 
while Officer Powell was conducting surveillance.
        A 
man approached Illingworth and began to speak with him.  At this point, 
Officer Powell also approached Illingworth to ask why he had parked his truck in 
a fire lane and to discuss a problem with narcotics that was occurring in and 
around that particular hotel.  Illingworth told Officer Powell that he was 
staying at the hotel because he was in town visiting his two children.[1]  Illingworth subsequently consented to a search of 
his vehicle, and Officer Powell found a .40 caliber Smith & Wesson in the 
driver’s door panel.[2]  Illingworth did not 
have a license to carry the handgun, and Officer Powell arrested him.  The 
trial court found Illingworth guilty of unlawfully carrying a weapon, and this 
appeal followed.
III. Traveling 
Defense To Unlawfully Carrying A Weapon
        Illingworth 
argues that the trial court erred when it concluded that the traveling defense 
to unlawfully carrying a weapon did not apply to him.  Specifically, 
Illingworth maintains that the trial court erred by finding that “he was 
required to store the handgun in some place other than his vehicle” once he 
reached his destination.  Illingworth further argues that he was 
“continuing his journey at the time that he encountered the police and was 
still covered by the traveling defense.”  The State contends that 
Illingworth was not traveling at the time of his arrest because his status as a 
traveler ceased to exist when he reached his destination, Lewisville.  
Additionally, the State argues that “it is by no means clear” that 
Illingworth was ever a traveler in his trip from Kaufman County to Denton 
County.
        A. Standard of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the judgment in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 
319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight 
and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04 
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 
2000).  Thus, when performing a legal sufficiency review, we may not 
re-evaluate the weight and credibility of the evidence and substitute our 
judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 
735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).  We must resolve any inconsistencies in the evidence in favor of 
the judgment.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        B. Traveling Defense
        “A 
person commits an offense if he intentionally, knowingly, or recklessly carries 
on or about his person a handgun . . . .” Tex. Penal Code Ann. § 46.02(a) (Vernon 
2003).  However, “[s]ection 46.02 does not apply to a person who . . . is 
traveling.”  Id. § 46.15(b)(3) (Vernon Supp. 2004-05).  
Section 46.15(b)(3)’s traveling exception is treated as a defense.  See 
id. § 2.03(e) (Vernon 2003) (“A ground of defense in a penal law that is 
not plainly labeled in accordance with this chapter has the procedural and 
evidentiary consequences of a defense.”)  The question of whether one is 
a “traveler” is a fact question to be resolved by the trier of fact.  See 
Smith v. State, 630 S.W.2d 948, 950 (Tex. Crim. App. 1982); Evers v. 
State, 576 S.W.2d 46, 50 (Tex. Crim. App. [Panel Op.] 1978).
        Despite 
judicial urging since 1898 for a statutory definition of traveling, the Texas 
Legislature has never defined the term.  Compare Bain v. State, 38 
Tex. Crim. 635, 44 S.W. 518, 518 (1898) (“We would suggest . . . that the 
legislature define what is meant by a ‘traveler.’”) with Moosani 
v. State, 914 S.W.2d 569, 575 (Tex. Crim. App. 1995) (Baird, J. dissenting) 
(recognizing that “the Legislature had not defined traveling in its many 
sessions since we began interpreting it”); see also Robert G. Newman, A 
Farewell to Arms—An Analysis of Texas Handgun Control Law, 13 St. Mary’s Law J. 601, 607 (1982).[3]  The case law attempting to apply the defense is in a 
“condition of hopeless confusion.”  See George v. State, 90 Tex. 
Crim. 179, 234 S.W. 87, 88 (1921); Birch v. State, 948 S.W.2d 880, 882 
(Tex. App.—San Antonio 1997, no pet.).
        For 
instance, it has been held that one traveling from county to county within the 
state is a traveler.  See Ballard v. State, 74 Tex. Crim. 110, 167 
S.W. 340, 340 (1914) (op. on reh’g) (“It is true that one who leaves San 
Augustine and travels to Teneha, in other county, would be a traveler, and he 
could carry a pistol while engaged on such a trip.”); Campbell v. State, 
58 Tex. Crim. 349, 125 S.W. 893, 893 (1910) (“It has also been held in many 
cases that one person going from one county to another, is a person 
traveling.”).  But it has also been held that if the trip between 
counties is “so short there is no real journey, then one is not a 
traveler.”  Sanchez v. State, 122 S.W.3d 347, 356 (Tex. 
App.—Texarkana 2003, pet. ref’d) (holding driving fifteen minutes between 
cities in different counties did not constitute traveling).  Cases hold 
that if a traveler loiters along the way, or unnecessarily deviates from the 
course of travel, he loses his status as a traveler.  Payne v. State, 
494 S.W.2d 898, 899-900 (Tex. Crim. App. 1973) (holding evidence defendant 
stopped in lounge for two hours en route from Tyler to Dallas, allegedly to 
await return call from building contractor he was to meet in Dallas, defeated 
traveling defense as a matter of law); see also Tadlock v. State, 124 
Tex. Crim. 637, 64 S.W.2d 963, 964 (1933) (holding issue of whether defendant 
improperly deviated from the highway upon which he claimed to be a traveler 
should have been submitted to jury); Sanchez, 122 S.W.3d at 356 (holding 
defendant's visits to friend’s homes were unnecessary deviations for pleasure 
not merely incidental to defendant’s journey that caused defendant to lose his 
status as a traveler as a matter of law, if he was ever entitled to such 
status).  However, interruption of the journey for legitimate incidental 
purposes does not forfeit a traveler’s right to carry a pistol. Kemp v. 
State, 116 Tex. Crim. 90, 31 S.W.2d 652, 653 (Tex. Crim. App. 1930) (holding 
twenty-minute stop for meal at restaurant did not constitute deflection from his 
journey that would forfeit traveler exemption).  Whether one stays 
overnight is also a factor to be used in determining if he qualifies as a 
traveler.  See Vogt v. State, 159 Tex. Crim. 211, 258 S.W.2d 795, 
796 (1953) (explaining, “[W]e were aware of no case where one was held to be a 
traveler whose absence was for less than a day.”).  Yet, an overnight 
stay is not required to claim the traveling defense.  See Matocha v. 
State, 890 S.W.2d 144, 146-47 (Tex. App.—Texarkana 1994, pet. ref’d) 
(op. on reh’g).  Some cases hold that once a traveler arrives at his 
destination and secures a room he is no longer a traveler.  See Ballard, 
167 S.W. at 340 (“When the evidence shows that he went to bed after arriving 
at the end of his journey, gets up next morning, puts on his pistol, and goes in 
search of [a person], he was guilty of carrying a pistol.”); see also 
Stilly v. State, 27 Tex. App. 445, 11 S.W. 458, 458 (1889).  Likewise, 
one who has returned to his home area after traveling loses his status as a 
traveler. Soderman v. State, 915 S.W.2d 605, 609 (Tex. App.—Houston [14th 
Dist.] 1996, pet. ref’d, untimely filed).  Thus, there is “no hard and 
fast rule” to apply when determining whether one is a “traveler” pursuant 
to section 46.15(b)(3) of the penal code.  See Matocha, 890 S.W.2d 
at 147.
  

C. Illingworth Was Traveling, But the Evidence Supports the Trial Court’s 
Determination that He Lost His Status as a Traveler When He Arrived at His 
Destination
        Illingworth 
resides in Scurry, Texas, which is located in Kaufman County.  To reach his 
children, he must travel through three counties: Kaufman County, Dallas County, 
and Denton County.  See Ballard, 167 S.W. at 340. [RR2: 27]  In 
its brief, the State points out that the distance between Lewisville (in Denton 
County) and Scurry “is approximately 60 miles and takes roughly one hour and 
twenty minutes to travel.”  Illingworth testified that he makes the trip 
every weekend and that he stays overnight, either in a hotel or at a friend’s 
house.  See Vogt, 258 S.W.2d at 796.  Illingworth does not 
remain in Lewisville for long periods of time, only a few days.[4]  
In this case, he arrived Friday night, January 3.  Furthermore, Illingworth 
drives his truck to Lewisville; he does not walk, ride a bicycle, or use any 
other mode of travel.  See Kemp, 31 S.W.2d at 653.
        The 
purpose of Illingworth’s journey was to visit his children.  See id.  
Moreover, the purpose for carrying the handgun was not contrived.  See 
Birch, 948 S.W.2d at 882.  Illingworth testified, “I kept all my guns 
with me when I was leaving my house because my house had been broken into 
several times, as I kept other belongings locked in the tool box.”[5]  Upon arriving in Lewisville, he either registers at 
a hotel or stays with a friend.  Based on our examination of the record, he 
does not own a house, rent an apartment, or have any other related interest in a 
dwelling in the Lewisville area.  At the time of his arrest, Illingworth 
had neither returned back to Kaufman County nor deviated from his course of 
travel and loitered.  See Payne, 494 S.W.2d at 900.  
Accordingly, we hold that Illingworth conclusively established that he was 
“traveling” as he journeyed from Scurry to Lewisville.  See Tex. Penal Code Ann. § 46.15(b)(3); Campbell, 
125 S.W. at 893.
        It 
appears from the record that the trial court determined that Illingworth was 
traveling as he proceeded from Scurry to Lewisville,[6] 
but then implicitly found that Illingworth’s status as a traveler ended when 
he reached Lewisville, prior to his arrest.  The court stated:
  
Well, I’m wondering if you believe the traveling defense requires - - in this 
particular case - - once he reaches his destination, Denton County, to then have 
him take the weapons outside of his vehicle, secure them in his room so that 
while he’s in Denton County, he then is able to travel to and from.
 
The 
trial court further opined:
  
Okay.  I don’t believe the law is that once you reach a destination that 
you’re allowed to have the weapon in the vehicle unless it’s adequately 
secured and away from things.  I don’t find that in this particular case 
since it’s on the side of the pocket.
  
I 
don’t doubt - - dispute the fact that you came from Scurry, Van Zandt County 
[sic].  The issue is whether or not the law allows you to have your weapon 
in the side door while traveling around Denton County and/or while you’re - - 
leave it there for the night.  I don’t think it does.
  
        The 
present facts are analogous to the facts in Stilley and in Evers.  
In Stilley, the court held that a defendant who had traveled to 
Gainsville and stopped at a wagon yard outside town was a traveler, but that he 
lost his status as a traveler when he entered the town to consume liquor at the 
bar.  11 S.W. at 458.  The appellate court explained,
  
It would be an unreasonable interpretation of the intent of the law to hold that 
a person traveling might stop in a town or city, and idly stroll through its 
streets and visit its gambling dens and saloons and public places, armed with a 
pistol.  The practical result of such an interpretation of the statute 
would cause our cities and towns to be infested with armed men, while the 
citizens of such places would be prohibited from carrying arms to protect 
themselves from these privileged characters.  We are of opinion, therefore, 
that the evidence does not show that the defendant, at the time he was found in 
the gambling-house with the pistol upon him, was a "person traveling," 
within the meaning of the statute.  He was not then traveling.  He was 
not engaged in any business connected with his journey.  If he was so 
engaged it devolved upon him to show it, which he failed to do.  His having 
the pistol on his person at the time, place, and under the circumstances proved, 
made a prima facie case of guilt against him, and it devolved upon him to 
establish the facts or circumstances on which he relied to excuse or justify the 
prohibited act.
  
Id. 
at 458-59.  Likewise, in Evers, the evidence showed that the 
defendant traveled from Louisiana to Dallas, but continued to carry his handgun 
on or about his person while he drove about Dallas the following day.  576 
S.W.2d at 50.  The court of criminal appeals held that because the 
defendant had arrived at his destination and secured a room, he was no longer 
“traveling.”  Id.
        Here, 
Illingworth was arrested on his second evening in Lewisville after he had 
already stayed one night in the Days Inn.  Although Illingworth qualified 
as “traveling” while driving from Scurry to Lewisville, and from Lewisville 
to Scurry, we cannot conclude that the determination of the trial court, as 
finder of fact, that Illingworth was not in the course of traveling when he was 
arrested for unlawfully carrying a weapon is supported by legally insufficient 
evidence.  See, e.g., Soderman, 915 S.W.2d at 610 (“Thus, even if 
appellant had previously been a traveler, we find no evidence that he was in the 
course of that travel when he was apprehended.”).  Accordingly, we 
overrule Illingworth’s sole point.
IV. Conclusion
        Having 
overruled Illingworth’s sole point, we affirm the trial court’s judgment.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
F:   DAUPHINOT, HOLMAN, and WALKER, JJ.
 
PUBLISH
 
DELIVERED: 
January 13, 2005

NOTES
1.  
Officer Powell testified that subsequently Illingworth said he was there to 
purchase methamphetamine.  Illingworth testified that he never told Officer 
Powell that he was there to buy methamphetamine that night.
2.  
Officer Powell also found a 12-gauge shotgun, a .380 Llama pistol located in a 
safe mounted to the rear wall of the truck, two night vision binoculars, two 
knives, a set of handcuffs, a digital camera, a pair of walkie talkies, and a 
police scanner.
3.  
Mr. Newman wrote,

Although the courts have requested that the legislature define exactly what is 
meant by traveler, the legislature has, as yet, failed to respond.  Those 
accused of violating section 46.03 have repeatedly attempted to define traveler, 
but the Texas Court of Criminal Appeals has consistently held these definitions 
improper.  Perhaps the only way to determine what constitutes a traveler is 
to delineate what the court of criminal appeals has determined a traveler is 
not.
(citations 
omitted).
4.  
Illingworth testified on cross-examination, “Normally, I come in on the 
weekend.  Sometimes if I had Friday off, I’d catch an extra day and come 
in.  And if I couldn’t afford to rent a room for three nights, I’d stay 
with a friend for a night.”
5.  
Illingworth further testified:
        [Prosecutor]: 
So do you always have the gun there?
        [Illingworth]: 
Just when I’m traveling.
        [Prosecutor]: 
But even when you’re in town for a few nights, you keep it there?
        [Illingworth]: 
Just when I’m traveling from Scurry to a distance where I’m staying 
overnight.
6.  
However, it did not expressly state so, and the State raises this issue in its 
brief.